Decided 21 April, 1902.

## WHITE *v.* LADD.

[68 Pac. 739.]

POWER OF COURTS TO VACATE VOID JUDGMENTS.

1. A court rendering a judgment void on its face has the inherent power, even on its own motion, to set the judgment aside at any time.

ATTACHMENT—RETURN OF SERVICE—NAME OF OCCUPANT.

2. The validity of an attachment, under Hill's Ann. Laws, § 149, subd. 1, does not depend upon the accuracy of the recital therein of the name of the occupant of the land levied on.

PRESUMPTION OF VALIDITY OF ATTACHMENT PROCEEDINGS.

3. Every intendment of the law favors the sufficiency of an attachment proceeding, where the writ was issued from a court of general jurisdiction, unless the writ affirmatively shows a want of jurisdiction.

ATTACHMENT AND JUDGMENT—RES JUDICATA.

4. Where, in a suit begun by attachment, the defendant died before service of summons, and service was thereupon had upon his executor, the jurisdiction of the court depended upon the validity of the attachment, and the judgment ordering the sale was, therefore, not conclusive as to the validity of the seizure of part of the property, merely because the remainder was well attached; but the question of such validity could be raised on motion to confirm the sale.

FORMER ADJUDICATION AS AN ESTOPPEL.

5. A judgment is conclusive of every fact necessary to uphold it, of all matters actually determined, and, further, of every other matter which the parties might have litigated and settled as incident to and necessarily connected with the subject-matter of the litigation, as either claim or defense, and this rule applies to both trials and defaults : *Neil* v. *Tolman,* 12 Or. 289, and *Glenn* v. *Savage,* 14 Or. 567, cited.

APPLICATION TO MOTIONS OF THE DOCTRINE OF RES ADJUDICATA.

6. Whatever may have formerly been the rule, the tendency of later cases is to apply the doctrine of *res adjudicata* to decisions upon motions, and to hold that where a point either of law or fact has been necessarily passed upon in deciding a motion that point is settled between the parties and their privies : thus, where the sufficiency of the service of an attachment to give jurisdiction to order the sale of the attached property was necessarily involved and passed upon in the determination of two motions to dismiss the attachment, and such determination has been affirmed on appeal, the question cannot be again raised on objection to the confirmation of the sale of the attached property.

RES ADJUDICATA BY JUDGMENT. .

7. Where the question of the sufficiency of the service of an attachment to give jurisdiction over the property seized is raised in an amended complaint, and not controverted, the judgment ordering the sale of the property is conclusive, and the question cannot be raised on objection to the confirmation of the sale.

From Multnomah :  ARTHUR L. FRAZER, Judge.

This was originally an action to recover money by Isam White against A. H. Johnson, accompanied by an attachment. Johnson was out of the state, and died a few hours after the action had been commenced. His executrix was substituted as defendant, and, upon her death, her administrator became defendant. The present appeal is from an order sustaining objections to the confirmation of a sale of part of the attached property.                                          REVERSED.

For appellant there was a brief over the name of *Cotton, Teal & Minor,* with an oral argument by *Mr. Wirt Minor.*

For respondent there was a brief over the names of *R. & E. B. Williams,* and *Williams, Wood & Linthicum,* with an oral argument by *Mr. Stewart B. Linthicum.*

MR. JUSTICE WOLVERTON delivered the opinion.

This is the third appeal, and the question now presented is raised by a motion to set aside a sale of attached property on execution, and to vacate the judgment directing the sale, and has relation to the sufficiency and validity of the attachment. A view in the retrospect will not be amiss, in arriving at a clear understanding of the situation. Shortly after the filing

of the complaint in this action against A. H. Johnson, and the issuance of the summons and writ of attachment, and after the appointment of Cordelia Johnson executrix of the will of defendant, who died before the summons could be served on him, to wit, on May 29, 1894, the plaintiff filed a motion for continuance, basing it upon an affidavit wherein it is averred that certain real property of the defendant had been attached, and the manner of the attachment was particularly set out, in effect as shown by the return of the sheriff; whereupon the court granted an order of continuance against the executrix, who, having been served with a copy of the complaint, summons, and order of continuance, appeared specially, and moved the court to set aside the service of summons and the order of the court continuing the action against her, "for the reason that the service of said summons is illegal, and the court had no jurisdiction to make said order." This motion was denied, and the judgment with reference to it was made the basis of an appeal to this court. A reversal was adjudged because of irregularities attending the service of summons upon the executrix: *White* v. *Johnson,* 27 Or. 282 (40 Pac. 511, 50 Am. St. Rep. 726). Upon the case being remanded, the plaintiff filed an amended and supplemental complaint, setting out the filing of an affidavit and undertaking, the issuance of the writ of attachment, its due execution, the appointment of Mrs. Johnson executrix, and that the cause had been continued against her as the personal representative of the original defendant. A copy was served upon the executrix, together with a copy of the summons, and in due time she appeared again specially, and moved to set aside the service of summons, and the order of the court relative to the continuance made and entered, April 6, 1896, for the reasons that no writ of attachment had been issued, and the court had no power or jurisdiction to make the order. This motion, after a full hearing, was overruled, and judgment entered adjudging and ordering, among other things, that the attached property be held and sold to satisfy the same. Another appeal was prosecuted, but the proceedings of the trial court were held to be regular,

and the judgment affirmed: *White* v. *Ladd,* 34 Or. 422 (56 Pac. 515).

The return of the sheriff on the writ of attachment, so far as it is involved in this controversy, is as follows:

"I further certify that I further executed the within writ of attachment on the 16th day of April, 1894, at the hour of 3 o'clock P. M. of said day, by attaching all of the right, title, and interest of the within-named defendant in and to the following described real property situated in the City of Portland, County of Multnomah, State of Oregon, to wit: 'Beginning at a point at the intersection of the north side of Park Avenue with the east side line of Ford Street, running thence northerly along the east side line of said Ford Street to its intersection with the south side line of Washington Street; thence easterly along the south side line of Washington Street to its intersection with the west side line of St. Claire Street; thence southerly along the west side line of St. Claire Street to its intersection with the north side line of Park Avenue; thence westerly along north side line of Park Avenue to place of beginning; all of said property lying and being in the City of Portland, Multnomah County, State of Oregon,'—by leaving with and delivering a copy of said writ of attachment, prepared and certified to by me as sheriff, to a Chinaman, the sole occupant thereon and thereof, whose name to me is unknown, and by filing with Henry E. Reed, Clerk of the Circuit Court of the State of Oregon for the County of Multnomah, certificates of said attachment."

Another parcel of realty was attached under the same writ, and at the same time, about the validity of which no question is made, and has been sold and the proceeds applied towards the satisfaction of plaintiff's demand. The following portion of the above-described realty was, on August 4, 1899, sold by the sheriff under execution to satisfy the balance due upon plaintiff's judgment, and bid in by him, to wit:

"Beginning at a point in the west line of St. Claire Street, which point is 200 feet distant, measured in a northerly direction along the west line of St. Claire Street, from the point where the west line of St. Claire Street intersects the north line of Park Avenue, and running thence in a westerly direction on a line parallel with the north line of Park Avenue 300

feet, more or less, to the east line of Ford Street; thence northerly along the east line of Ford Street to a point where the east line of Ford Street intersects the south line of Wayne Street extended westerly; thence easterly on the south line of Wayne Street extended westerly to the point where the south line of Wayne Street extended westerly intersects the east line of St. Claire Street; thence southerly along the west line of St. Claire Street to the place of beginning.''

When this sale came on for confirmation the defendant objected thereto, and moved the court to set it aside, and also ''to set aside, vacate, and hold for naught so much of the judgment and order of sale herein as provided for the sale'' of the whole of said tract, as shown by the return of the sheriff on the writ of attachment, and particularly of the tract sold under execution and bid in by plaintiff, and to set aside the attachment claimed to exist upon said realty, including the tract sold under execution, ''for the reason that said attachment is not valid, * * and the court had no power to make any order of sale thereof.''

The motion is based upon affidavits of the defendant and others, the defendant having been substituted for Cordelia Johnson while the case was last here on appeal. By these it is averred, among other things, that the property attached embraces and includes five distinct parcels of land, namely : One parcel embracing the property sold under execution; one embracing all of the attached property lying, adjoining, and north of the property sold; one consisting of 100 feet fronting on St. Claire Street, and extending westerly through to Ford Street, adjoining the parcel sold on the south; one consisting of the west half of the 100 feet next south, being the south 100 feet of the property attempted to be levied upon; and the other consisting of the east half thereof; that one Bickel was the owner of the said west half at the time of the levy, had a dwelling thereon, and occupied the same with his family; that the said east half was owned by one Warren, but unoccupied. The tract lying to the north of the premises sold stood in the name of William M. Ladd, as trustee for Johnson, to dispose of and apply the proceeds in payment of Johnson's

liabilities, and as to this it is averred that there was situated
on the northwest corner a frame building occupied at the time.
The 100 feet adjoining the property sold on the south stood
in the name of Johnson, but was intended to have been con-
veyed to Ladd under a like trust as the property to the north,
but by mutual mistake was omitted, and the 100 feet lying
next south included. The deed, however, was subsequently
reformed in this particular. As to this, it is averred that it,
together with a portion of that sold, was fenced off so as to
constitute a separate and distinct tract from the remainder,
and that the other portion of the property sold was also dis-
tinct from the remainder, upon which was located the dwell-
ing house of Johnson occupied by his family at the time. The
other averments by affidavit tend to show that the premises
were not occupied by a Chinaman.

The contention is that the judgment directing the sale of the
real property so attached, including the property sold under
execution, is void, for want of jurisdiction of the court, and is
based upon the alleged invalidity of the attachment, which, it
is urged, arises from an insufficient service of the writ in two
particulars, namely, a copy thereof was not left with the occu-
pant, and the attempted attachment was upon several distinct
parcels of realty, including therewith property of third parties.
It is maintained (1) that the validity appears upon the face
of the return of the sheriff; and (2) that, if it does not so ap-
pear, it has been shown by affidavits *aliunde,* and that it is com-
petent in a case of this kind to contradict such return and show
that the facts are different from those stated therein. Plain-
tiff makes the point that these questions cannot be considered
upon objections to the confirmation of the sale, and such ob-
jections can only extend to substantial irregularities in the
proceedings concerning the sale, to the defendant's probable
loss and injury: Hill's Ann. Laws, § 296, subd. 2, and *Krutz*
v. *Batts,* 18 Wash. 460 ( 51 Pac. 1054). The defendant seeks
to evade this point, however, and insists that his motion is to
set aside and vacate the judgment as it relates to the property
in dispute, as well as to set aside the sale. Of course a vaca-

tion of the judgment would be tantamount to setting the sale aside. The motion in this sense, it is insisted, is a direct attack upon the judgment, and lets in proof *aliunde* to show a want of jurisdiction in the court to render it. We are disposed, without deciding as to the regularity of the proceeding by which the question is raised, to treat the motion as one to vacate the judgment, and to consider it as such, without determining at this time whether it constitutes a direct or collateral attack thereon.

1. A judgment void upon its face may be set aside or vacated at any stage of the proceedings, or at any time, whether within the term at which it was rendered or afterwards, when the attention of the court in which it was rendered is attracted to it. Such a judgment, it has been said, "is a dead limb upon the judicial tree, which should be lopped off. * * It can bear no fruit to the plaintiff, but it is a constant menace to the defendant." This power is inherent with the court, and will be exercised, even at its own suggestion, for the preservation of its dignity, the protection of its officers, and to arrest further action, which can serve no lawful purpose, and the most effectual method is by extirpation of the judgment itself as superfluous and vexatious: *Evans* v. *Christian,* 4 Or. 375; *Ladd* v. *Mason,* 10 Or. 308; *People* v. *Greene,* 74 Cal. 400 (16 Pac. 197, 5 Am. St. Rep. 448); *Lee* v. *O'Shaughnessy,* 20 Minn. 173; *Hanson* v. *Wolcott,* 19 Kan. 207.

2. But we cannot assent to the proposition that the present judgment is such a one as it affects the property in question. The return of the sheriff shows that the copy of the writ was left with the occupant of the premises, who is described as a Chinaman, and whose name was unknown to the officer. The statute* does not require that the name of the occupant shall be stated, however convenient it may be as a description of the person upon whom the copy is served. If unknown, the fact affords a sufficient excuse for not stating it. It cannot be assumed, in the absence of more explicit language, that it was

---

*Hill's Ann. Laws, § 149, subd. 3.

the intention of the legislature that a valid service should depend in all cases upon the ascertainment of the name of the occupant. If so, the levy would fail in every instance where the occupant would refuse to give his name, or it could not otherwise, after the exercise of reasonable diligence, be accurately ascertained. Suppose the action be against Chinamen, and Chinese realty was sought to be levied upon, having a Chinese occupant; must the levy fail because these peculiarly secretive people should refuse to disclose the name of the occupant? Our attention has been called to no authority going to the exact question but the method employed can hardly be assumed to be without the reason and purview of the statute. As it pertains to the contention that separate parcels are included in one attachment, or that it extends to property not owned by the defendant, such a condition does not affirmatively appear upon the face of the return. So that the judgment rendered cannot be said to be void upon its face.

3. It is now settled law in this court that every intendment of the law is in favor of the sufficiency of the attachment, where the writ emanates from a court of superior and general jurisdiction, unless the record affirmatively shows a want of jurisdiction: *Bank of Colfax* v. *Richardson,* 34 Or. 518, 527 (54 Pac. 359, 75 Am. St. Rep. 664); *Schlosser* v. *Beemer,* 40 Or. 412 (67 Pac. 299).

4. The plaintiff contends that the matter now sought to be presented to establish the invalidity of the attachment is *res adjudicata,* and that defendant is thereby concluded by the judgment rendered. It is well understood by this time that the jurisdiction of the court to grant a continuance of the cause and to proceed against the executrix depended upon a valid attachment, and that the judgment was effectual only in so far as there was property attached. If none had been attached the action could not have been continued, and, if the attachment fails as to any, the judgment is without support as to that; so that the jurisdictional inquiry was as to what property was legally attached and brought within the jurisdiction of the court. When Johnson died the action thenceforth was

substantially *in rem,* and the inquiry was whether the court acquired jurisdiction of the property through the method adopted and pursued in serving the writ. The fact, therefore, that some property was well attached does not affect the jurisdictional question pertaining to the legality of the seizure of the remainder.

5. The potency of a judgment as an estoppel concludes every fact necessary to uphold it, and extends, not only to matters actually determined, but to every other matter which the parties might have litigated and have had decided as incident to and essentially connected with the subject-matter of the litigation, and every matter coming within the legitimate purview of the original action, both in respect to the matters of claim and defense, and a default judgment, or one confessed, is attended with the same legal consequences, as there exist no tenable grounds of distinction between a title confessed and one tried and determined: *Barrett* v. *Failing,* 8 Or. 152; *Neil* v. *Tolman,* 12 Or. 289 (17 Pac. 103) ; *Glenn* v. *Savage,* 14 Or. 567 (13 Pac. 442) ; *Harris* v. *Harris,* 36 Barb. 88; *Hanson* v. *Manley,* 72 Iowa, 48 (33 N. W. 357) ; *Hobby* v. *Bunch,* 83 Ga. 1 (10 S. E. 113, 20 Am. St. Rep. 301) ; *Cromwell* v. *Sac County,* 94 U. S. 351. This applies where a subsequent action is sought to be maintained upon the same claim or demand. But if the second action is upon a different claim the former judgment will only operate as an estoppel against the matters actually litigated, or as to facts distinctly in issue in that action: *Applegate* v. *Dowell,* 15 Or. 513 (16 Pac. 651) ; *Cromwell* v. *Sac County,* 94 U. S. 351.

6. This rule is not so pervasive where applied to motions and adjudications had with reference thereto. From general declarations contained in the cases it may be gathered that the rule formerly obtained that the decision of a motion was never to be regarded in the light of *res adjudicata,* and ordinarily it may still be said that such a decision is not so far conclusive upon the parties as to prevent their drawing the same matters in question by leave of the court first had and obtained, or in the more regular form of a suit or action. The reasons which

form the basis of the rule are that motions are frequently
made in the hurry of the trial, considered in a summary man-
ner, and disposed of without full or mature consideration, and
they are not the subject of review by another or higher tri-
bunal.   Such reasons have latterly been adjudged inapplica-
ble to motions that admit of more solemn and deliberate con-
sideration, and touching which an appeal may be prosecuted
to another court and review had relative to the matters in dis-
pute.   Mr. Freeman, in his excellent work on Judgments
(volume 1 [4 ed.], § 325), says of this condition: ''The ten-
dency of these decisions is to disregard the form or time of an
adjudication, and to inquire whether the question really arose
and was or might have been contested on the merits, and neces-
sarily decided by the court.   If so, it will generally be regarded
as conclusively and finally settled, though such decision dis-
posed of a motion, rather than of an independent action or
proceeding, and especially if the action of the court was sub-
ject to review by some appropriate appellate proceeding.''
This was said with reference to the effect of the adjudication
when drawn in question in cases other than those in which
they were made and rendered.   When drawn in question at
another stage in the same case, strictly speaking, the principle
of *res adjudicata* does not apply.   Rules have grown into fa-
miliar use and practice, however, which, in the prevention of
the reagitation of the same matter, operate with substantially
the same potency.   The trial court is endowed with a discretion
respecting the renewal of a motion to be exercised only when
there is something attending the former hearing to excite a
suspicion of unfairness, or the parties were taken by surprise,
or upon the discovery of new facts of a material nature, or the
springing of new conditions, and the like, and as to these the
moving party is charged with the exercise of the same degree
of diligence that would be sufficient to free him from the im-
putation of laches if he were engaged in the regular trial of
the cause.   The public welfare and the dictates of common
justice require that there should be an end of litigation, and
the maxim is just as applicable to the judicial determination

of motions as of the cause at the final hearing. In a *resume* of the doctrine applicable in this feature Mr. Freeman again says (section 326) : ''The tendency of the recent adjudications is to inquire whether an issue or question has been in fact presented for decision and necessarily decided, and, if so, to treat it as *res adjudicata,* though the decision is the determination of a motion or summary proceeding, and not of an independent action. This is especially true when the decision did not involve a mere question of the proper form or time of proceeding, but was the determination of a substantial matter of right, upon which the parties interested had a right to be heard upon the issues of law or fact, or both, and these issues, or some of them, were necessarily decided by the court as the basis of the order which it finally entered granting the relief sought.'' The foregoing observations have the support of numerous adjudications : *Dwight* v. *St. John,* 25 N. Y. 203 ; *Second Ward Bank* v. *Upman,* 14 Wis. 596 ; *Roulhac* v. *Brown,* 87 N. C. 1 ; *Grier* v. *Jones,* 54 Ga. 154 ; *Obear* v. *Gray,* 73 Ga. 455 ; *Gordinier's Appeal,* 89 Pa. 528 ; *Johnson* v. *Latta,* 84 Mo. 139 ; *Page* v. *Esty,* 54 Me. 319 ; *Hoge* v. *Norton,* 22 Kan. 374. Mr. Justice RAPALLO, in *Riggs* v. *Pursell,* 74 N. Y. 370, and Mr. Justice BREWER, in *Commissioners* v. *McIntosh,* 30 Kan. 234 (1 Pac. 572), following the New York cases, prescribe certain limitations upon the rule and confine its operation to facts actually called in question and litigated, without extending it so as to conclude the party as to a fact or facts which might have been litigated, but were not ; but it is believed this limitation is without relevancy where the point subsequently insisted upon, whether based upon a legal proposition or a fact, was necessarily passed upon in the court's decision in reaching the conclusion arrived at upon the former motion : *Spitley* v. *Frost* (C. C.), 15 Fed. 299, and *National Bank of Port Jervis* v. *Hansee,* 15 Abb. N. C. 488.

Now, in the case at bar plaintiff, by his motion for a continuance against Cordelia Johnson, executrix, set forth by affidavit the facts attending the attachment. These are the same as returned by the sheriff, it is true, but the matter was

called directly to the attention of the court. The defendant, without controverting them, moved to set aside the service of the summons and the continuance, on the ground that the court was without jurisdiction to make the order, and was successful. The case was appealed without going further, and reversed because of irregularities attending the service of the summons. On the return of the case to the trial court, and after the executrix had been served with an amended and supplemental complaint and an *alias* summons, the defendant renewed her motion, basing it upon the same jurisdictional ground, and, being unsuccessful, the case was again appealed, but the decision of the trial court was affirmed. The question as to the sufficiency of the attachment was necessarily passed upon at both trials of the motion, or the judgment could not have gone that way, and this as it may affect either parcel of the realty attached. Mrs. Johnson must of necessity have been acquainted with the facts relied upon for an impeachment of the sheriff's return. True, the present administrator affirms, and, we have no doubt, truly, that he had no knowledge of such facts until recently, but it is nowhere denied that Mrs. Johnson, his predecessor, was without such information. So that the matter is not presented in a favorable light for the trial court even to grant a rehearing upon leave regularly applied for. But no such application was made, and the case has twice gone to judgment upon the motion, and twice been appealed, and the judgment of the lower court finally affirmed. So far the rulings of this court have become the law of the case, and the doctrine of *res adjudicata* applies with even greater rigor.

7. Beyond all this, however, plaintiff's amended complaint presented the jurisdictional question as to the sufficiency of the attachment in an issuable form, and the default of the defendant in failing to controvert it, and in suffering it to be taken as confessed, renders it *res adjudicata,* under the general rule relative to trials upon the merits. After such repeated trials, and the default and the confession of the defendant, and the adjudications with reference thereto, the question

now sought to be presented should have been settled for all time, and it must be so regarded. The defendant is, therefore, precluded from again litigating it by the motion interposed to vacate the judgment as to the parcel of realty now in dispute.

There being no other objections urged against the confirmation, the order of the trial court will be reversed, and the cause remanded with directions to confirm the sale on execution, and it is so ordered.                                    REVERSED.

Argued 17 April; decided 3 May, 1902; rehearing denied.